**UNITED STATES of America, Plaintiff,**

v.

**James SARTORI, David Sartori, Willowbrook Coal Co. and Willowbrook Farms, Defendants.**

No. 98–14087–Civ.

United States District Court, S.D. Florida, Fort Pierce Division.

June 29, 1999.

Stephen Herm, U.S. Department of Justice, Washington, DC, for plaintiff.

Kenneth G. Oertel, Oertel, Hoffman, Fernandez & Cole PA, Tallahassee, FL, for defendant.

## OMNIBUS ORDER

K. MICHAEL MOORE, District Judge.

THIS CAUSE came before the Court upon Defendants' Motion to Dismiss Plaintiff's Complaint (DE # 7, filed May 15, 1998). Response and Reply have been filed. The parties have also filed a Supplementary Brief and Response per this Court's Order of March 29, 1999, which requested such supplementary briefing on certain issues.

### I. Background

Plaintiff brings claims against Defendants under Sections 301 and 309 of the

Clean Water Act[1] ("CWA") for injunctive relief and civil penalties. Defendants collectively own a tract of real property in south Florida. In its Amended Complaint,[2] Plaintiff alleges that between October 1993 and July 1997, Defendants used earth-moving equipment to excavate, move, and deposit earth on a 1280–acre site on the property. Plaintiff alleges that by moving the material as alleged without first obtaining required permits, Defendants violated Section 301(a) of the CWA. Pursuant to Section 309, Plaintiff seeks a permanent injunction against Defendants from discharging materials on the site in violation of the CWA, as well as assessment of civil penalties.

## II. Discussion

Defendants moved to dismiss Plaintiff's Amended Complaint on the grounds that: (1) the administrative definition of "waters of the United States" encompassed in the CWA is unconstitutional in light of *United States v. Wilson*,[3] a Fourth Circuit decision, and more broadly, the Supreme Court's decision in *United States v. Lopez*;[4] (2) the activities described in the Amended Complaint do not constitute a "discharge of a pollutant" because it is merely "incidental fallback" of soil; and (3) the Amended Complaint fails to specifically state what waters were affected by Defendants' activities. The Court ordered the parties to provide supplementary briefs regarding *Wilson* and the constitutionality of the "waters" definition. The parties have provided such supplementary briefings. The Court now turns to the arguments.

### A. Definition of "Waters of the United States"

The CWA generally states that "discharge of any pollutant by any person shall be unlawful."[5] The CWA further defines "discharge of a pollutant" as "any addition of any pollutant to navigable waters from any point source."[6] "[N]avigable waters" are in turn defined as "the waters of the United States."[7] The Environmental Protection Agency ("EPA") has administratively defined "waters of the United States" to include *inter alia* "[a]ll waters which are currently used, or were used in the past, or may be susceptible to use in interstate or foreign commerce,"[8] as well as so-called "other waters," i.e., "[a]ll other waters such as intrastate lakes, rivers, streams ... the use, degradation, or destruction of which *could* affect interstate or foreign commerce."[9] This latter "other waters" definition was held to be unconstitutional by the Fourth Circuit in *Wilson*.[10]

In that case, the Fourth Circuit asked whether the Army Corps of Engineers ("the Corps")[11] exceeded its congressional authorization under the CWA to promulgate necessary regulations by defining

---

1. 33 U.S.C. §§ 1311, 1319.

2. Although Defendants' Motion to Dismiss was directed against Plaintiff's original Complaint, parties have stipulated that the arguments presented should apply to Plaintiff's subsequently filed Amended Complaint as well. *See* Stipulation Regarding United States' First Amended Complaint (filed July 2, 1998).

3. 133 F.3d 251 (4th Cir.1997).

4. 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995).

5. 33 U.S.C. § 1311(a).

6. *Id.* § 1362(12).

7. *Id.* § 1362(7).

8. 40 C.F.R. § 230.3(s)(1).

9. *Id.* § 230.3(s)(3) (emphasis added).

10. Technically, the definition at issue in *Wilson* is found at 33 C.F.R. § 328.3(a)(3); the definition at issue in this case is found at 40 C.F.R § 230.3(s). The Court treats these two sets of definitions, promulgated by the Corps of Engineers and the EPA, respectively, as substantively indistinguishable for all relevant purposes.

11. The EPA and the Corps share responsibility for enforcing the CWA. *See United States v. Mills*, 817 F.Supp. 1546, 1551 n. 4 (N.D.Fla. 1993).

"waters of the United States" to include purely *intra* state wetlands whose degradation "could affect" interstate commerce.[12] The three-judge panel held that the Corps' definition of "waters of the United States" exceeded its congressional authorization under the CWA because under *Lopez*, administrative regulation under the CWA is limited to discharge of pollution on waters whose degradation "substantially affect[s] interstate commerce."[13] Therefore, the Corps' definition of "waters of the United States" to include "intrastate ... wetlands ... the use, degradation or destruction of which *could affect* interstate or foreign commerce" was too tenuous a link to interstate commerce.[14]

It now appears, however, that the Court need not address the thorny issue of applying *Wilson* to this case or of determining the constitutionality of the "other waters" definition. Plaintiff acknowledges that its claims do not rely on the "other waters" definition.[15] Specifically, it has stated that its claims rely instead on the definition contained in 40 C.F.R. § 230.3(s)(1),[16] i.e., "[a]ll waters which are currently used, or were used in the past, or may be susceptible to use in interstate or foreign commerce." In *United States v. Eidson*,[17] the Eleventh Circuit approved of this Section 230.3(s)(1) definition.[18] The court, relying on the Supreme Court's decision in *United States v. Riverside Bayview Homes, Inc.*,[19] observed that the CWA was enacted "to restore and maintain the chemical, physical, and biological

integrity of the Nation's waters,"[20] and that in order to carry out this mandate, Congress defined "waters" broadly.[21] The Eleventh Circuit noted that the EPA, acting in accordance with legislative intent, formulated a broad definition of "waters" to include those waters that "*may* be susceptible" to use in interstate or foreign commerce, and "*may* eventually lead to waters affecting interstate commerce," particularly because water can move in hydrologic cycles beyond a layman's understanding of "waters."[22]

The Court therefore finds that the definition of "waters of the United States" that Plaintiff is willing to rely on does not implicate the constitutional concerns raised by *Wilson* and the "other waters" definition, and thus effectively moots Defendants' *Wilson* argument. However, the Court believes that the Amended Complaint remains ambiguous as to the exact definition relied upon by Plaintiff. To clarify this ambiguity, the Court finds that Plaintiff's Amended Complaint should be dismissed without prejudice, with leave to file a Second Amended Complaint incorporating the definition of "waters of the United States" found in 40 C.F.R. § 230.3(s)(1).

### B. "Incidental Fallback"

The Court takes this opportunity to address Defendants' argument that the activities alleged in the Amended Complaint do not constitute "discharge of dredged mate-

---

**12.** *Wilson,* 133 F.3d at 255–56 (citing 33 C.F.R. § 328.3(a)(3)).

**13.** *Id.* at 256 (citation omitted).

**14.** *See id.* at 257 (emphasis in original). "The regulation requires neither that the regulated activity have a *substantial* effect on interstate commerce, nor that the covered waters have any sort of nexus with navigable, or even interstate waters." *Id.*

**15.** *See* Pl.'s Supp.Br. at 2 ("the United States ... does not rely on the 'other waters' definition").

**16.** *See id.*

**17.** 108 F.3d 1336 (11th Cir.1997).

**18.** *See id.* at 1342–43.

**19.** 474 U.S. 121, 106 S.Ct. 455, 88 L.Ed.2d 419 (1985).

**20.** *Eidson,* 108 F.3d at 1341 (citation omitted).

**21.** *Id.* (citing *Riverside,* 474 U.S. at 133, 106 S.Ct. 455).

**22.** *See id.* at 1341–42 (citations omitted).

rial" because it is merely "incidental fall-back."[23] "Incidental fallback" is the minor displacement of soil caused by landclearing operations, also known as "bucket drip-pings" that fall from equipment as earth is excavated.[24] The Amended Complaint clearly alleges much more than mere "inci-dental fallback"; it alleges that Defen-dants "discharged dredged and/or fill ma-terial, including but not limited to dirt, rocks and other indigenous materials, into the 1280–acre site by *clearing, dredging, sidecasting, filling, draining, spreading and leveling* with earth-moving machin-ery."[25] Such allegations constitute the un-derlying landclearing and dredging opera-tions that give rise to incidental fallback, not the fallback itself. Accepting these allegations as true for the purposes of a motion to dismiss,[26] there is absolutely no doubt that such broader earth-moving op-erations do constitute "discharge of a pol-lutant" as defined in the CWA.[27]

### C. Waters Affected

Finally, the Court takes this opportunity to address Defendants' argument that the Amended Complaint should be dismissed because it fails to allege the specific "wa-ters of the United States" that are at issue, or the connections between Defen-dants' land and such waters. A complaint need not make such factually specific alle-gations, at least for the purposes of a motion to dismiss. It is enough that it is a "short and plain statement of the claim showing that the pleader is entitled to relief"[28] that gives Defendants fair notice of the nature and grounds of the claim.[29]

### III. Conclusion

Based on the foregoing, it is ORDERED AND ADJUDGED as follows:

(1) Defendants' Motion to Dismiss Plaintiff's Complaint (DE # 7, filed May 15, 1998) is GRANTED. Plaintiff's Amended Complaint is DISMISSED WITHOUT PREJUDICE. Plaintiff has leave to file a Second Amended Complaint that incorporates a clarification of the spe-cific definition of "waters of the United States" that it will rely upon in this action. Such Second Amended Complaint shall be filed within twenty (20) days of the date of this Order.

(2) Defendants have also filed a Motion for Summary Judgment which will be af-fected, at least partially, by the substance of this Order and the subsequently filed Second Amended Complaint. Therefore, Defendants' Motion for Summary Judg-ment (DE # 54, filed February 26, 1999) is DENIED WITHOUT PREJUDICE. De-fendants have leave to refile their Motion for Summary Judgment, with or without amendments, at a future date.

(3) In light of the time constraints creat-ed by the scheduled trial in this action and other pending motions in this action whose disposition will be affected by this Order, this case is RESET for trial commencing the two-week period of October 12, 1999. The pretrial conference has been resched-uled for September 27, 1999 at 9:00 a.m. In

---

23. Defs.' Mot. to Dismiss at 8.

24. *See National Mining Ass'n v. U.S. Army Corps of Engineers,* 145 F.3d 1399, 1403 (D.C.Cir.1998).

25. Pl.'s Am.Compl. ¶ 20 (emphasis added).

26. *See SEC v. ESM Group, Inc.,* 835 F.2d 270, 272 (11th Cir.1988).

27. *See, e.g., Avoyelles Sportsmen's League, Inc. v. Marsh,* 715 F.2d 897, 923–25 (5th Cir. 1983); *United States v. Banks,* 873 F.Supp. 650, 657 (S.D.Fla.1995) ("Defendant's cover-

ing, leveling, grading, and filling of the for-merly vegetated sites at issue were discharges of a dredged soil, biological material, rock and/or sand, each of which is defined as a pollutant by the CWA.") (citation omitted); *United States v. Robinson,* 570 F.Supp. 1157, 1163 (M.D.Fla.1983) ("The 'discharge of a pollutant' occurred when defendant ... uti-lized dump trucks and bulldozers to deposit and spread fill material into wetland areas.").

28. Fed.R.Civ.P. 8(a)(2).

29. *See Conley v. Gibson,* 355 U.S. 41, 47–48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

conformance with the original notice of trial, the pretrial stipulation and all other pretrial preparations shall be completed **NO LATER THAN FIVE DAYS PRIOR TO THE PRETRIAL CONFERENCE.** Any and all pretrial motions, including motions for summary judgment, must be filed no later than sixty (60) days prior to trial date. All discovery shall be completed thirty (30) days prior to the pretrial conference. Mediation shall be completed no later than sixty (60) days before the scheduled trial date. The failure to engage in discovery pending settlement negotiations shall not be grounds for continuance of the trial date. All other matters relating to the scheduled trial shall be brought to the attention of the Court at Calendar Call on Thursday, October 7, 1999 at 2:00 p.m. in Courtroom Three, Eleventh Floor, James Lawrence King Federal Justice Building at 99 N.E. 4th Street, Miami, Florida.

All exhibits must be pre-marked and a typewritten exhibit list setting forth the numbers and description of each exhibit must be submitted at the time of trial. For jury trial, counsel shall prepare and submit to the Court proposed jury instructions to the Court on paper and on computer disk (if drafted using a computer). For non-jury trial, the parties shall prepare and submit to the Court a carefully prepared set of Proposed Findings of Fact and Conclusions of Law fully supported by the evidence which counsel expects the trial to develop, and fully supported by citations to law. The proposed jury instructions or the proposed findings of fact and conclusions of law shall be submitted to the Court no later than three days prior to the scheduled trial date.